CHARLES GOSSWILLER, Appellee, v. JULIUS JANSEN, Appellant.

**PAYMENT:** Recovery of Payments—Mistake—Evidence. Evidence
1 under the issue of mistake reviewed, and held sufficient to justify the recovery of payments.

**COMPROMISE AND SETTLEMENT:** Nature and Requisites—Mistake or Fraud—Effect. A plea of compromise and settlement

necessarily fails when it appears that the payment was made in full performance of an undisputed previous contract, and that the *amount* of the payment was adjusted in accordance with an untrue statement of the one so pleading.

*Appeal from Sac District Court.*—E. G. Albert, Judge.

Wednesday, April 4, 1917.

Action to recover from the defendant the sum of $1,000 as having been paid to the defendant by the plaintiff by mistake. The case was brought and tried in equity. The trial court found for the plaintiff, and the defendant appeals.—*Affirmed.*

R. L. McCord, for appellant.

Conner & Powers, for appellee.

Evans, J.—The plaintiff, Gosswiller, bought of the defendant, Jansen, a farm of 320 acres, for an agreed price of $40,000. The sale was made through an agent, Hubbell. The contract of sale was entered into January 13, 1914. This contract provided for a down payment of $1,000, with balance to be paid on March 1, 1915, such balance to draw interest from March 1, 1914, and possession to be given to the purchaser on March 1, 1914. In March, 1915, the parties to the contract made a settlement thereunder in the absence of Hubbell, the agent. The contract on its face called for the payment of the purchase price of $40,000, less a mortgage of $22,000, and less the sum of $1,000 paid at the time of the execution of the contract. This left $17,000 to be paid to the defendant by the plaintiff, and this was the amount paid. Previous to this time, Hubbell had told Gosswiller that $1,000 of the purchase price belonged to himself by agreement with Jansen as a commission, and that he had obtained a credit on the contract from Jansen for such amount, with the understanding that the same should be paid by Gosswiller to Hubbell.

1. Payment: recovery of payments: mistake: evidence.

Hubbell thereby obtained from Gosswiller said sum of $1,000 in the. manner hereinafter indicated. From such conversation with Hubbell, Gosswiller understood that he was to pay Jansen a balance of $16,000 only, and that the sum of $1,000 had been credited upon his contract for the purpose of enabling him to pay such sum to Hubbell. When Gosswiller and Jansen had their settlement, in March, 1915, Jansen denied that Hubbell was to receive any commission, and contended that the full sum of $40,000 was to come to him without any deduction for Hubbell. Gosswiller thereupon paid him the full amount. At the time of this settlement, Gosswiller was not conscious of the fact that he had previously paid $1,000 to Hubbell. This lapse on his part was caused by the circumstances of the payment, which were somewhat out of the ordinary. The payment was. made in the form of a credit. upon another transaction between Gosswiller and Hubbell and one Hassett, for which credit Gosswiller executed a receipt; that is to say, at the time Gosswiller became a customer for the purchase of Jansen's farm, he was the owner of a farm of 160 acres which he had listed for sale with Hubbell. Before he could become a purchaser of the Jansen farm, it was necessary to find a purchaser for his farm. Hubbell found Hassett as a purchaser for Gosswiller's farm. A contract of sale having been entered into from Gosswiller to Hassett, Hubbell obtained from Gosswiller a receipt for $1,000 to apply upon the purchase money due from Hassett to Gosswiller. This was the form in which Hubbell obtained his alleged commission for the sale of the Jansen farm. In order to induce Hassett to purchase the Gosswiller farm, Hubbell had agreed to pay him $600 out of the Jansen commission. The *receipt* of Gosswiller, therefore, for such sum to apply upon the purchase price due from Hassett, furnished a subject-matter of division between Hubbell and Hassett. Gosswiller admits the genuineness of his signa-

ture to such receipt, but has no recollection of signing same, and had no such recollection at the time that he settled with Jansen. Subsequent to Gosswiller's settlement with Jansen, he settled with Hassett, and this receipt was turned in as a credit to Hassett in such settlement. The result was that Gosswiller paid $41,000 for the Jansen farm, instead of $40,000.

It is now contended for him that Jansen's denial at the time of the settlement that Hubbell had any right to a commission was unwarranted and contrary to the fact. It is contended that the agreement between Jansen and Hubbell was that Jansen was to accept $39,000 net for a sale of the farm, and that the remainder was to go to Hubbell. If this was the real agreement on the part of Jansen, then he received from the plaintiff $1,000 more than he was entitled to. For Jansen, it is contended that he was to receive $40,-000 net, and that Hubbell was to receive no commission. If this be true, then Hubbell received from the plaintiff $1,000 to which he was not entitled, and the defendant would not be liable for such wrong on Hubbell's part. At this point, the testimony of the respective parties is in direct conflict. The question thus disputed involves to our mind the key fact of the case. In rendering decree for the plaintiff, the trial court necessarily found that the defendant was to receive out of the purchase price $39,000 net, and Hubbell, the balance. Approximately an equal number of witnesses testified on each side. The testimony for plaintiff, however, has some corroboration in the circumstances, and has the support of more reasonableness than that of the defendant. At the time the contract was signed by Jansen, Hubbell did endorse a credit thereon for $1,000 as paid thereon. Hubbell testified, in effect, that this was done in order to reduce the amount due Jansen to $39,000, and to enable him to settle with Gosswiller for his commission. The body of the contract provided for the down payment of $1,000

and acknowledged the receipt thereof. It will be seen, therefore, that the endorsement of a credit of $1,000 on the back of the contract might be deemed as consistent with the recitals in the body of the contract, and confirmatory thereof rather than an addition thereto. The two credits, therefore, one in the body of the contract and one on the back thereof, presented an ambiguity. The two credits could be shown as the equivalent of one, by showing that only the sum of $1,000 was paid. On the other hand, they were consistent with the contention of Hubbell that the body of the contract acknowledged the receipt of $1,000, which was paid to Jansen, and that the endorsement on the back of the contract was intended to cover his commission. Without now attempting to construe this ambiguity, or to declare the necessary legal effect of these two entries, we think that the circumstances of the entering of the second credit by Hubbell with the knowledge of Jansen is a circumstance of some corroborative value. It is not denied that Hubbell acted as agent for Jansen in the sale of this farm. Presumptively, therefore, he was entitled to some commission. The contention for the defendant is that he was to receive no commission. This contention is based upon the further contention that Jansen had purchased this farm through the agency of Hubbell two years prior, and that Hubbell had then promised him that, if Jansen was dissatisfied with it, he would sell it for him without commission. This latter contention is denied by Hubbell. It is shown that Hubbell had made rather an extraordinary effort in the sale of this farm, and had been engaged in such effort for some time, and had incurred considerable expense. In order to procure Hassett as a purchaser for Gosswiller's farm, he had agreed to pay him and did pay him $600 out of his alleged commission, according to the testimony of both Hubbell and Hassett. If we can deem this fact proved, it also becomes a circumstance of con-

siderable corroborative value. The contention of the de-
fendant that no commission was to be paid has in it also
a measure of improbability. The witnesses for the defend-
ant included all the members of his family. Some of these
were quite young, and testified to some details which would
not be likely to have attracted their attention. There were
some exaggerations also, in the testimony of the defendant
and his wife, which were apparently intended to add em-
phasis. The defendant testified as follows:

"During our conversation, my wife said to Mr. Hub-
bell, 'No, I don't want you to cheat this poor man,' and
he said, 'My God, no, I won't cheat the poor man,' the tears
running down his face. 'No, sir. I won't do that,' he said."

Mrs. Jansen testified to the same circumstance as
follows:

"I don't remember how it came around, but I said to
Mr. Hubbell that he didn't want to cheat a poor cripple
like Jansen, and he said 'No,' that he didn't want to cheat
anybody yet, and he commenced to cry."

We are not fully convinced that Hubbell shed tears
on the occasion in question. The tears of a real estate agent
are not common. They are not likely to appear without
adequate reason. No reason appears here, unless Hubbell's
version of what occurred is accepted. If he was to receive
no commission, he was not cheating Jansen, and there was
no occasion for warning. If he was pleading for a commis-
sion, the tears might have been justified as an aid to his
plea. Both Jansen and his wife testified that nothing was
said on the subject of commission on the occasion. Hub-
bell testified that, when he came to the home of Jansen and
presented a contract for the sale of the farm to Gosswiller,
Mrs. Jansen insisted that he should cut his commission to
$500. This request was refused by Hubbell, and it became
the subject of a considerable dialogue. Hassett was called
into the house because Hubbell claimed that he had promised

$600 of the commission to him as an inducement to his pur-
chase of the Gosswiller farm. Upon being called in, he
verified the claim of Hubbell in that regard. According
to Hubbell, this conference was somewhat strenuous. He
was confronted with the danger of losing the fruits of his
labor by the insistence of Mrs. Jansen that only $500 would
be paid. Such a situation was fairly conducive to sorrow,
and furnished the most adequate reason for tears that we
find in the record. The outcome of the conference was that
Jansen and his wife signed the contract, and the endorse-
ment heretofore referred to was made thereon.

It is worthy of some notice at this point that, though
Mrs. Jansen, as well as her husband, testified positively
that nothing was said on the subject of commission between
them and Hubbell at the time they signed the contract of
sale, Mrs. Jansen, in another part of her examination, testi-
fied that, when Hubbell presented the contract, she asked
him how much commission he wanted, and that he said
there would be no commission. This question on her part
was not consistent with the claim, that there was a previous
understanding that he was to have no commission. Her
question implied an offer of a commission in some amount.
It is not easily credible that an agent who had accomplished
a sale would reject *in toto* a proffered commission. In any
event, such a situation was not tearful, unless the tears
were those of immediate repentance. This evidence on the
part of Mrs. Jansen is quite corroborative of the claim of
Hubbell that there was a strenuous conference upon the
subject of commission. This much being found, it disposes
of the defendants' denial that the question of commission
was considered at all.

Without going into undue detail, it is sufficient to say
that, upon the whole record, the testimony on behalf of the
plaintiff appears the more reasonable and better corrob-
orated by circumstances than the testimony on behalf of

the defendant, and that the trial court therefore properly found this fact with the plaintiff.

It is urged for the defendant, however, that, even though this fact be found with the plaintiff, there was nevertheless a settlement of the controversy between the parties at the March, 1915, settlement. It is argued that the plaintiff at that time claimed that only $16,000 was due from him to the defendant, and that the defendant claimed and insisted upon the payment of $17,000; that the plaintiff yielded to such demand, and that this amounted to a settlement, and was not a payment by mistake. It is true that, at such settlement, the plaintiff put forward his understanding that only $16,000 was due to the defendant, and that the defendant demanded the full amount called for by the contract. The plaintiff, however, based his claim at that time upon the information he had received from Hubbell, and did not pretend to have any personal knowledge on his own part of the arrangement between Hubbell and Jansen. Jansen assured him that Hubbell was not to receive any commission. This was either a false representation or mistake on the part of Jansen. If Jansen's statement had been true, he was entitled to take the $17,000, and the plaintiff would have been entitled to recover from Hubbell the amount he had paid him upon his false representations. On the other hand, if Hubbell was authorized by Jansen to receive from Gosswiller $1,000 of the purchase price, then the plaintiff could not recover the same back from Hubbell. It is undisputed that the plaintiff paid $1,000 more than the contract price. This was obtained from him by the false representations either of Hubbell or of Jansen—the only question is which. It is true that his dealing with each of them was in the nature of a settlement, but it was a performance in full of a previous contract. It was not a settlement of existing dispute.

2. COMPROMISE AND SETTLEMENT: nature and requisites: mistake or fraud: effect.

It had in it no element of compromise. Relying upon defendant's statement of fact, concerning which the plaintiff himself had no personal knowledge, he paid the defendant in full. Inasmuch as we find that the fact thus stated was not true, it is putting it mildly enough to say that the plaintiff paid his money by mutual mistake.

We think the trial court properly entered its decree for the plaintiff. The judgment below is, therefore,—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.